**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 04-262 |
| v. | : | |
| | : | CIVIL ACTION |
| JAMES E. MacEWAN | : | NO. 07-3369 |

**MEMORANDUM**

**Baylson, J.**                                                                                    **March 31, 2008**

**I.     Introduction**

Presently before the Court is James MacEwan's ("Petitioner") Motion to Vacate his

Sentence pursuant to 28 U.S.C. § 2255.  On August 14, 2007, Petitioner filed a pro se petition

(Doc. No. 56) and a Memorandum of Law in Support drafted by Counsel.  (Doc. No. 54).  The

Government filed a response on September 14, 2007.  (Doc. No. 58).  For the reasons discussed

below, the Court will deny the Motion without an evidentiary hearing.

**II.     Background and Procedural History**

On May 6, 2004, Petitioner was charged with a three-count indictment for the

receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(b).[1]  (See Indictment 1-3).

---

[1]     Count One charged that MacEwan "knowingly received material that contained
child pornography, as that term is defined in Title 18, United States Code, Section
2256(8), that had been mailed, shipped and transported in interstate commerce by any
means, including by computer, that is approximately 1,068 graphic image files which he
downloaded from the Internet and stored on a Compaq Presario computer" in violation of
18 U.S.C. § 2252A(a)(2)(b).  (Indictment 1).

Count Two charged that MacEwan "knowingly received material that contained
child pornography, as that term is defined in Title 18, United States Code, Section
2256(8), that had been mailed, shipped and transported in interstate commerce by any
means, including by computer, that is approximately 157 graphic image files which he
downloaded from the Internet and stored on a Compaq Presario computer . . . and
approximately 96 graphic image files which he downloaded and stored on a Toshiba
laptop computer" in violation of 18 U.S.C. § 2252A(a)(2)(b).  (Indictment  2).

Count Three charged that Petitioner "knowingly received by mail material,

On October 28, 2004, Petitioner waived his right to a jury trial, pled guilty to Count Three of the indictment, and proceeded to a bench trial before this Court on Counts One and Two.  (See Govt. Resp. 5).  Petitioner was represented by Ellen Brotman, Esq. ("Ms. Brotman") during his plea hearing and bench trial.  (See id. at 2).  This Court found Petitioner guilty of Count Two, but not guilty on Count One due to the Government's failure to prove that the receipt of the child pornography had transpired within the statute of limitations period.  On January 31, 2005, this Court sentenced Petitioner to the statutory mandatory minimum sentence of fifteen years, or 180 months of incarceration, five years of supervised release, a $100,000 fine, and a $100 special assessment.[2]  (See Petr.'s Mem. Supp. 6).

Petitioner filed a direct appeal, challenging his conviction under Count Two.  (See Govt. Resp. 6).  Petitioner argued:  (1) Congress never intended to regulate receipt of child pornography that did not involve an interstate transfer, and (2) the fifteen-year statutory mandatory minimum sentence violated the Eighth Amendment. (See Petr.'s Mem. Supp. 2).  The Third Circuit rejected both arguments, holding that (1) Congress did have the authority to regulate the receipt of child pornography not involving a transfer which crossed state lines, Congress did intend that Section 2252(A)(a)(2)(b) prohibit such conduct, and therefore the Government did not have to prove that any child pornography crossed state lines; and (2) the statutory minimum sentence did not violate the Eighth Amendment.  See United States v.

---

specifically five videotapes that contained child pornography, as that term is defined in Title 18, United States Code, Section 2256(8), that had been mailed, shipped and transported in interstate commerce" in violation of 18 U.S.C. § 2252A(a)(2)(b). (Indictment 3).

[2]        Petitioner was subject to enhancement sentencing due to the fact that he was on probation when he committed the crimes. Prior to this conviction, Petitioner was convicted of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). (See Govt. Resp. 1).

MacEwan, 445 F.3d 237 (3d Cir. 2006).

On August 14, 2007, Petitioner, represented by new counsel, filed this Petition pursuant to 28 U.S.C. § 2255, claiming (1) ineffective assistance of counsel and (2) mental incompetence prevented him from entering a knowing and voluntary plea of guilty to Count Three and from knowingly and voluntarily waiving his right to a jury trial. (See Petr.'s Mem. Supp. 6). Petitioner has requested an evidentiary hearing.

## III.   **Parties' Contentions**

### A.   **Petitioner's Contentions**

Petitioner asserts that his plea of guilty to Count Three and waiver of a jury trial as to Counts One and Two were involuntary for five reasons. (See Petr.'s Mem. Supp. 3). First, Petitioner argues that Ms. Brotman erroneously advised him that a constitutional challenge to a mandatory minimum sentence had a chance of success, making his guilty plea to Count Three involuntary. (Id. at 5-8). Second, Petitioner argues that Ms. Brotman was ineffective by not challenging the interpretation of the statutory language of the jurisdictional element of 18 U.S.C. § 2252A. (Id. at 7-8). Third, Petitioner asserts that his guilty plea and waiver of jury trial were improperly influenced through the coercion of his prior counsel and attorney-in-fact, Francis Miller, because Mr. Miller was a beneficiary of Petitioner's will. (Id. at 8-9). Fourth, Petitioner asserts that he was incompetent to stand trial and plead guilty. (Id. at 10). Fifth, Petitioner states in his pro se petition that discovery may reveal other grounds for his petition: namely that Petitioner was subjected to a potentially invalid anticipatory search warrant, and that Petitioner's counsel stipulated at trial that certain images constituted child pornography, but "the file does not reveal whether this was so." (See Pro Se Pet. 7).

### B.   Government's Contentions

The Government asserts that this Court should dismiss this petition because all claims asserted are without merit.  (Govt. Resp. 7).   First, the Government argues that Petitioner's claim concerning Ms. Brotman's advice on his chance of success has no merit. Petitioner himself has acknowledged that Ms. Brotman informed him that such argument had only a "prospect" of success.  (Id. at 10-11).  In addition, the Government argues that even if Petitioner was misadvised, the guilty plea colloquy corrected any error committed by Ms. Brotman. (Id. at 11).  Moreover, the Government argues that Petitioner cannot demonstrate that the proceeding would have been different but for counsel's errors due to the Government's overwhelming and incontrovertible" case as to Count Three.  (Id. at 15).

Second, the Government argues that the record shows Petitioner's guilty plea and waiver of jury trial were not the product of coercion by Mr. Miller.  (Id. at 17).  The Government points out that although Mr. Miller was a beneficiary in the Petitioner's will for a 1935 automobile worth approximately $20,000-$30,000, there is no evidence that any advice rendered to Petitioner was motivated by a desire to keep costs low, or that pleading not guilty would have kept costs down significantly.  (Id. at 19-20).  The Government argues that entering the guilty plea was not in the best interests of either Mr. Miller or Ms. Brotman because it would result in a drain on the Petitioner's finances in the form of a criminal fine.  (Id. at 20).

Third, the Government argues that there is no merit to the claim that Ms. Brotman was ineffective for failing to raise a proper Commerce Clause challenge.  (Id. at 21-24)  The Government argues that not only did Ms. Brotman challenge the interpretation of the statutory

language of the jurisdictional element of 18 U.S.C. § 2252A, but that the Third Circuit rejected these arguments.  (Id. at 23).

Fourth, the Government argues that Petitioner has not provided any indicia that he was incompetent at the time of his guilty plea and trial. (Id. at 24).

Fifth, the Government asserts that Petitioner's claims as to the anticipatory warrant and trial counsel's stipulation are procedurally defaulted.  However, if these claims are to be considered, the Government contends that the anticipatory warrant was "entirely proper in both its scope and execution" and that trial counsel's stipulation that certain images constituted child pornography was proper because the illicit images in the case did constitute child pornography, as Petitioner himself admitted during his guilty plea to Count Three and through counsel during the bench trial.  (Id. at 29).

## IV.   **Standard of Review**

 "A prisoner in custody under sentence of a court established by an Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . .  may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255.  A defendant, however, is entitled to relief under Section 2255 only if there are errors of law that constitute "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 426 (1962)

When a motion is made pursuant to 28 U.S.C. § 2255, the question of whether to order an evidentiary hearing is committed to the sound discretion of the district court. See United States v.

-5-

Day, 969 F.2d 39, 41 (3d Cir. 1992).  In exercising that discretion, however, the court must accept the truth of the Petitioner's factual allegations unless they are clearly frivolous on the basis of the existing record.  Id. at 41-42.  Further, a court shall grant a prompt hearing to determine the issues raised in the motion, unless the motion, files and records of the case conclusively show that the prisoner is entitled to no relief.  Id.   With respect to a claim for ineffective assistance of counsel, a hearing is required unless it is indisputable that counsel's conduct satisfied applicable standards. United States v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005).

## V.    **Discussion**

This Court finds no need for an evidentiary hearing as the record conclusively establishes that Petitioner is not entitled to the relief sought in the petition.     The Court has determined to deny the Petition without an evidentiary hearing for the following reasons, each of which will be discussed in more detail below:

1.     As Defendant decided to plead guilty to Count Three, which carried a statutorily-required mandatory minimum sentence of fifteen years, which was the exact sentence imposed, after a thorough on-the-record colloquy, the Court rejects any claim that counsel was ineffective, or that there is any possibility that a hearing would reveal any prejudice to Petitioner given his unequivocal admission of guilt as to possession of child pornography.

2.     As the trial judge who observed Petitioner on two occasions and thoroughly interrogated Petitioner on the record concerning his guilty plea, his waiver of a jury, and also heard from Petitioner at sentencing, I completely reject, as unfounded and contrary to the facts of record, any assertions that the Petitioner did not knowingly and voluntarily decide to plead guilty and waive a jury trial.

-6-

3.     For the same reasons, the record clearly shows that Petitioner was competent to stand trial, alert, aware of the charges against him, aware of the minimum mandatory sentence, and had a full understanding of all of the proceedings leading up to the imposition of his sentence. When an on-the-record colloquy with the defendant reveals that the defendant was adequately advised of his rights and knowingly pled guilty, post-conviction allegations, contrary to the statements in the record, do not require an evidentiary hearing.  See discussion of case law below.

The trial was scheduled for October 28, 2004, at which time Petitioner was represented by Ms. Brotman, a very experienced defense attorney, who was accompanied by John Rogers Carroll, an exceptionally experienced criminal defense lawyer who was in the same firm as Ms. Brotman, and also by Mr. Miller, who was present but did not participate in the plea proceedings or the non-jury trial (although he did speak at the sentencing hearing).

Petitioner testified that he knew he was under oath, and that his answers to the questions must be truthful.  He identified where he was, what he was charged with and that he was satisfied with his representation by counsel.  (N.T. 7-8).  He was fully aware of the advice that his counsel had given to him, but unequivocally made it clear that his plea was his own decision.  He had worked in business for a number of years.  Although he was taking medication and had diabetes, there was nothing that would prevent his ability to understand what was happening and to participate in the proceedings.  (Id. at 10).

At this point, the Court asked Ms. Brotman and she responded:

> THE COURT: All right.  Ms. Brotman, based on your knowledge
> of the defendant do you believe that, as an officer of the Court, that

there's any problem with proceeding today in view of any medical problems that Mr. MacEwan has?

MS. BROTMAN: No, Your Honor.

THE COURT: You've been able to communicate with him satisfactorily?

MS. BROTMAN: Yes, Your Honor.

THE COURT: All right, thank you.

(Id. at 10-11)

As the Court had been advised that Petitioner wanted to plead guilty to Count Three, the undersigned read to him the charge in Count Three of the indictment. The Petitioner denied that anyone used any force, violence or threats to get him to plead guilty and that he was doing so of his own free will. On the topic of possible sentence, the following exchange took place:

THE COURT: All right. Has anybody promised you – what kind of – what sentence you'll get from me? Go ahead, you may speak to Ms. Brotman.

MS. BROTMAN: I think Mr. MacEwan is – we've have [sic] many discussions with Mr. MacEwan about the fact that this count carries a 15-year mandatory minimum as the law stands today.

THE COURT: Okay.

MS. BROTMAN: And so that's the sentence that I have discussed with him many times.

THE COURT: All right. All right. Do you understand, Mr. MacEwan, that under the law if you plead guilty to this and I accept your plea, then I will have to sentence you to 15 years mandatory minimum imprisonment?

MR. MacEWAN: Yes, sir.

THE COURT: Do you understand that?

-8-

       MR. MacEWAN:  I understand, sir.

(Id. at 23-24).

Petitioner also testified that he understood that by pleading guilty, he would be in violation of his probation (from an earlier conviction for the same offense) and could receive an additional sentence from the judge who had placed him on probation.  (Id. at 25).  He expressed his understanding of what would happen in connection with the preparation of the Presentence Report, and when asked why he wanted to plead guilty, he said:

> "Why do I want to – it happened.  I want to plead guilty for the
> simple reason that it actually happened, sir."

(Id. at 27).

Petitioner further indicated a full understanding of his constitutional rights and that he understood he would give up certain rights by pleading guilty.  (Id. at 27-29).  When the prosecutor read a summary of the facts that the Government would have proven if the case had gone to trial, Petitioner unequivocally stated that he admitted those facts.  (Id. at 32). Before actually pleading guilty, the Court asked Petitioner "Do you still want to change your plea from not guilty to guilty as to Count Three?  And he answered, Yes, sir." (Id.)  At that point, the undersigned made the following finding:

> THE COURT: All right.  I'm going to find the defendant is alert,
> competent and capable of entering an informed plea.  That the plea
> is a knowing and voluntary plea supported by an independent basis
> of facts containing each of the essential elements of the offense
> plead to [sic].  I'll therefore accept the guilty plea, all right, on
> Count 3.

(Id.)

The Court then engaged in a further colloquy about Petitioner's intention to waive a jury

-9-

trial as to Counts One and Two.  When the Court posed a question to Ms. Brotman about whether she believed Petitioner was making a knowing and voluntary waiver of his right to a jury trial, Ms. Brotman replied, "Yes I do, Your Honor."  The Court then made a finding that Petitioner's waiver of a jury trial was knowing and voluntary.  (Id. at 36).  At this point, the Court heard argument and took the verdict under advisement.

At the sentencing hearing on January 31, 2005, several months after the guilty plea, Ms. Brotman was lead defense counsel, but Mr. Carroll and Mr. Miller were present along with Judy Hunt, the Probation Officer who interviewed Petitioner in connection with the preparation of the Presentence Report.  A psychological report had been filed under seal.

None of these esteemed officers of the Court gave any indication that there had been any defect in the guilty plea proceeding, that Petitioner was incompetent to stand trial, or that he had any lack of understanding about the proceedings in which he had previously admitted his guilt to Count Three of the indictment.  The Court would not have proceeded with sentencing if any of these esteemed professionals made any such suggestion.  The fact that they did not make any such a suggestion at the time speaks volumes about the baseless nature of the Petition.  There was argument on the constitutionality of the mandatory minimums, an argument that was subsequently raised on direct appeal, and rejected by the Third Circuit.  Mr. Miller spoke about Petitioner's asset situation in terms of his ability to pay a fine.  Before imposing sentence, the Court asked Petitioner whether he wished to make any statement and also ascertained that his attorneys would file an appeal for him.  Petitioner stated:

> THE COURT: Ms. Brotman has filed an excellent brief on your behalf, setting forth some legal positions, and I just want to find out if there is anything you would like to say before I impose

sentence?  I mean, this is your opportunity to speak if there's
anything you'd like to say before sentence is imposed.

MR. MacEWAN: I just, I deeply regret my actions and I now come
to realize that I do have an addiction.  I would like to try to have it
taken care of.  And I say, I'm deeply sorry for everything.

THE COURT: All right, thank you, Mr. MacEwan.

(Id. at 8-9).

The undersigned was thoroughly satisfied at the sentencing hearing, as at the plea hearing
and non-jury trial, that Petitioner was well-advised by competent counsel, that he exhibited full
awareness of his surroundings and the nature of the proceedings, and he made no complaints of
any kind.  He acknowledged that he was satisfied with the services of his counsel.  There was no
suggestion of any conflict of interest of any kind by anyone.  His decision to plead guilty was
knowing and voluntary and he had no infirmity at the time he pled guilty or when he was
sentenced.  As a second offender on child pornography charges, with the quantity of evidence
possessed by the government, Petitioner's decision to plead guilty to Count Three, and hoping
the Court would impose no more than the minimum mandatory sentence of 15 years, was a
rational choice.

A.      **The Court Does Not Need to Hold an Evidentiary Hearing**

In considering a petition filed under § 2255, the Court has discretion to decide whether to
hold a hearing, as long as the Court accepts as true all non-frivolous allegations in the petition.
United States v. Dawson, 857 F.2d 923, 927 (3d Cir. 1988).  A hearing is only necessary when
the record does not resolve factual allegations, such as in a situation where allegations made by
the Petitioner primarily relate to purported occurrences outside the courtroom of the undersigned,

-11-

upon which the record can shed no light.  See United States v. Jackson, 2006 WL 333833 at *7 (E.D.Pa. May 15, 2006) citing Machibroda v. United States, 368 U.S. 487, 494-495 (1962) and United States v. Capisi, 583 F.2d 692, 695 (3d Cir. 1978).  It is not uncommon for a Court to decide it has adequate information to dismiss a petition without conducting a hearing.  See United States v. Ritter, 2002 WL 538980 at *2 (E.D.Pa. April 12, 2002), aff'd 93 Fed.Appx. 402 (3d Cir. March 26, 2004),  U.S. v. Arana, 2005 WL 3159669 at *4 (E.D.Pa. December 18, 2001) and Jackson, 2006 WL 333833 at *7.

The Third Circuit has stated that in cases where a petitioner questions the efficacy of his counsel, "an objectively reasonable inquiry may obviate the need for such a hearing. . . Put differently, no hearings as to counsel's strategy are necessary in cases in which the conduct challenged is objectively reasonable, as courts can simply reject the claims on reasonableness grounds."  Thomas v. Varner, 428 F.3d 491, 501 n. 10 (3d Cir. 2005).

In deciding whether or not to have a hearing on a habeas petition, a judge's prior familiarity with a case is considered instructive.  Jackson, 2006 WL 333833 at *7 citing McCarthy v. United States, 764 F.2d 28, 31 (1st Cir. 1985).  This is particularly true in a matter such as the instant case, where a defendant raises collateral objections about whether his own decisions before the undersigned were knowing and voluntary–a subject on which the undersigned has personal knowledge.  Id. (dismissing Petitioner's § 2255 petition regarding the voluntary nature of his plea without a hearing where the Court had taken Petitioner's nolo contendere plea).[3]

---

[3] In Jackson, Judge DuBois used language equally applicable in this case: "A hearing is necessary only where the record does not resolve factual allegations, such as in a situation where allegations relate primarily to purported occurrences outside the courtroom upon which the record can shed no light . . . The Court, based upon the record in the case and the Court's

This Court holds that there is no need for an evidentiary hearing because the evidence of record conclusively demonstrates that Petitioner is not entitled to the relief sought and Mr. McEwan has pointed to no evidence outside the record that could have bearing on his claim for relief.

**B.      Counsel Was Not Ineffective**

In order to succeed on an ineffective assistance of counsel claim, a petitioner must prove that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "that the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). Under the first prong, "[t]he proper measure of attorney performance" is "reasonableness under prevailing professional norms." Id. at 688. This objective standard requires the reviewing court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 669. Even if Petitioner establishes that counsel's conduct was "professionally unreasonable," the Sixth Amendment is not violated unless there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.

**1.      Ms. Brotman Did Not Erroneously Advise Petitioner to Enter a
            Guilty Plea With Respect to Count Three**

"A habeas petitioner challenging the voluntary nature of his or her guilty plea faces a heavy burden." Zilich v. Reid, 36 F.3d 317, 320 (3d Cir. 1994). "A petitioner challenging the voluntary nature of a facially valid guilty plea based on unfulfilled promises or representations by counsel must advance specific and credible allegations detailing the nature and circumstances of

_____

extensive familiarity with Jackson's mental health history, concludes a hearing is not necessary to resolve the claims presented in Jackson's § 2255 Motion." Jackson, 2006 WL 333833 at *7.

such promises or representations." Id. at 320-21.  When a defendant enters a plea of guilty on the advice of counsel, the voluntariness of the plea depends on whether there is a reasonable probability that, but for counsel's errors, the defendant would have proceeded to trial instead of pleading guilty.  United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997).  In Hill v. Lockhart, the Supreme Court held that the Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel.  474 U.S. 52, 58 (1985).  Thus, a guilty plea may be withdrawn based on ineffective assistance of counsel only if the Petitioner shows that: (1) his attorney's advice was under all the circumstances unreasonable under prevailing professional norms, and (2) he suffered sufficient prejudice from his counsel's errors.  Strickland, 466 U.S. at 68.

Under the Strickland test, Petitioner has to show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  Hill, 474 U.S. at 59.  Petitioner argues that he relied on Ms. Brotman's advice that there was a chance of success in challenging the mandatory minimum sentence on appeal, and without this "reasonable prospect" of success he would not have pled guilty.  (See Petr.'s Mem. Supp. 5). Petitioner, however, testified that he was fully aware that by pleading guilty to Count Three he would be subject to a mandatory minimum sentence of 15 years by the in-court guilty plea colloquy.  The colloquy completely refutes his post-sentencing argument.  (N.T. 23-24).

The Third Circuit has "long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where . . .  an adequate plea hearing was conducted."  U.S. v. Shedrick, 493 F.3d 292, 299 (2007) (finding that defense counsel's failure to advise defendant about potential upward departure did not prejudice defendant where defendant had participated in

-14-

an in-court colloquy where the possibility of an upward departure in sentencing was discussed).[4] The Third Circuit explained that "[t]he plea colloquy is designed to uncover hidden promises or representations as to the consequences of a guilty plea" and therefore, "declarations made under oath ought not to be lightly cast aside." Zilich v. Reid, 36 F.3d 317, 320 (3d. Cir. 1994). Moreover, "the representations of the defendant, his lawyer, and the prosecution at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Nonetheless, the burden is not "invariably insurmountable." Id., quoting Blackledge, 431 U.S. at 74-75.

Here, assuming arguendo that there were any erroneous predictions of success regarding the constitutionality of a mandatory minimum sentence, they were corrected by the in-court plea colloquy, which explained more than once that pleading guilty to Count Three imposed a mandatory minimum sentence of 15 years. (See N.T. 23-24). Given this record, Petitioner cannot now assert that he would not have pled guilty to a count that imposed this sentence without relying on the alleged advice of Ms. Brotman about the probable success of an appeal. Accordingly, the Petitioner's § 2255 petition as to this claim that counsel was ineffective is denied.

---

[4] See also, United States v. Jones, 336 F.3d 245, 254 (3d Cir. 2003) (holding counsel was not ineffective for allegedly promising defendant a sentence of "no more than 71 months" where defendant was advised in open-court colloquy of potential maximum sentence and there were no other promises regarding sentence); United States v. Mustafa, 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that [defendant's] former counsel may have made regarding sentencing calculations were dispelled when [defendant] was informed in open court that there was no guarantee as to sentence, and that the court could sentence him to the maximum."); Masciola v. United States, 469 F.2d 1057, 1059 (3d Cir. 1972) (per curiam) (holding that "[a]n erroneous prediction of a sentence by defendant's counsel does not render a guilty plea involuntary" where record demonstrates that a proper plea colloquy took place during which defendant acknowledged that he was aware of his maximum potential sentence).

## 2.     **Petitioner's Commerce Clause Challenge Fails**

"A prisoner may not use a § 2255 motion as a vehicle to relitigate an issue that has been raised on direct appeal."  <u>See</u> <u>United States v. Turner</u>, 1999 WL 88937, at *1 (E.D. Pa. Feb. 22, 1999), <u>citing</u> <u>United States v. DeRewal</u>, 10 F.3d 100, 105 n. 4 (3d Cir. 1993).  Petitioner's claim of ineffective assistance of counsel is also based upon his contention that his trial counsel failed to argue that the statutory interpretation of  "engaged in commerce" requires "actual proof of interstate commerce" in challenging Count Two.   This issue, however, was raised on direct appeal by counsel and rejected.  <u>See</u> <u>United States v. MacEwan</u>, 445 F.3d 237 (2006).  On direct appeal, Counsel presented a twofold challenge to the jurisdictional element of 18 U.S.C. § 2252A(a)(2)(B): (1) statute requires the Government to prove images were transmitted interstate; and (2) the Government failed to prove beyond a reasonable doubt that the jurisdictional element was proven.  The Third Circuit rejected both arguments and held that (1) Congress did have the authority to regulate the receipt of child pornography not involving a transfer which crossed state lines; and (2) Congress did intend that Section 2252(A)(a)(2)(b) prohibit such conduct, and therefore the Government did not have to prove that any child pornography crossed state lines. <u>See</u> <u>MacEwan</u>, 445 F.3d at 237.

Petitioner contends that, on appeal, his counsel should have focused on Congress's ability to regulate interstate commerce, rather than the "substantial impact" argument which was raised. <u>See</u> <u>MacEwan</u>, 445 F.3d at 245.  Regardless of whether Counsel's commerce clause challenge fell outside reasonable professional standards, Petitioner cannot prove that the result of the proceeding would have been different had Counsel argued a different Commerce Clause challenge.  The Third Circuit thoroughly and conclusively addressed all issues regarding this

claim in its opinion and this Court may not re-litigate the issue.

### 3. The Stipulation Concerning the Images of Child Pornography Was a Valid Strategic Decision Made by Counsel

Petitioner argues in his <u>pro se</u> Petition, but not in his Memorandum of Law of Support, that counsel "stipulated at trial that all the images constituted child pornography, but the file does not reveal whether this was so." (<u>See</u> <u>Pro</u> <u>Se</u> Pet. 7). The Third Circuit has explained that "<u>Strickland</u> instructs [courts to] be deferential to counsel's tactical decisions, not to employ hindsight, and to give counsel the benefit of a strong presumption of reasonableness." <u>Deputy v. Taylor</u>, 19 F.3d 1485, 1493 (3d. Cir 1994). Therefore, "ineffectiveness will not be found based on a tactical decision which had a reasonable basis designed to serve the defendant's interests." <u>Werts v. Vaughn</u>, 228 F.3d 178, 190 (3d. Cir. 2000).

Here, Ms. Brotman stipulated that the images charged in Counts One and Two met the statutory definition of child pornography and that the files had been knowingly downloaded from the Internet. Petitioner does not specifically claim nor provide any additional facts as to how this stipulation created ineffective assistance of counsel. Furthermore, there is absolutely no evidence that Petitioner can demonstrate he suffered any prejudice under the second prong of <u>Strickland</u>. Thus, Petitioner's claim that Ms. Brotman's stipulation constituted inneffective assistance of counsel is without merit.

### 4. There is No Evidence that Mr. Miller Coerced Petitioner to Plead Guilty and Waive a Jury Trial Due to His Own Pecuniary Interests

A defendant can establish that a guilty plea is invalid by establishing that "an actual conflict of interest adversely affected his lawyer's performance." <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348 (1980). Where a defendant can show that his attorney had an "actual conflict," he need

not satisfy the two-pronged standard of <u>Strickland</u>.  <u>Id.</u> at 348.   In order to establish an "actual

conflict of interest," a defendant must show that his counsel advanced his own interest to the

detriment of the defendant.  <u>Id.</u>  A lawyer's pecuniary interests alone, however, do not create an

actual conflict of interest.  <u>United States v. Martinson</u>, 1998 WL 111801 at *2 (E.D. Pa 1998).

Therefore, a Petitioner asserting that an attorney's pecuniary interests led him to shirk his ethical

obligation to provide dutiful representation of the client's Sixth Amendment claim is evaluated

according to the stricter standard enunciated in <u>Strickland</u>.  <u>Id.</u>

 Petitioner has failed to set forth any adequate allegation demonstrating that his guilty plea

was the result of Mr. Miller's alleged conflict.  The record refutes Petitioner's claim that his

counsel's conflict induced him to plead guilty.

 Moreover, Petitioner cannot make a claim that he suffered prejudice under the second

prong of <u>Strickland</u> because Petitioner does not and cannot assert that there is a reasonable

probability that but for counsel's alleged coercion, Petitioner would have proceeded to trial on

these charges.  <u>Strickland</u>, 466 U.S. at 687-88.  In fact, at his guilty plea hearing, in response to

the Court's inquiry as to why petitioner was pleading guilty, Petitioner responded, "Why do I

want to – it happened.  I want to plead guilty for the simple reason that it actually happened, sir."

(<u>See</u> Govt. Resp. Attach. A 24).  <u>See</u> <u>Parry v. Rosemeyer</u>, 64 F.3d 110, 118 (3d Cir. 1995)

(treating the petitioner's failure to claim innocence or to express reluctance to plead guilty as a

factor in determining that petitioner was not prejudiced by counsel's alleged error).

 Next, Petitioner argues that Mr. Miller coerced Petitioner to waive his right to a jury trial,

and thus his waiver was involuntary.  A habeas Petitioner seeking relief from an involuntary jury

waiver has the burden to show that the waiver was not intelligently, voluntarily, and knowingly

-18-

made.  Eaton v. City of Tulsa, 415 U.S. 697, 702 (1974).

When Petitioner waived his right to a jury trial, this Court fully explained what a waiver

meant, what the right of a jury trial encompassed, and described how the jury would be chosen,

what its role would be, and explained that its verdict would have to be unanimous in order for

Petitioner to be convicted.  (N.T. 28).  Moreover, Petitioner acknowledges in his petition that Mr.

Miller only represented him at the preliminary hearing and Mr. Miller did not speak at trial.  (See

Petr's Mem. Supp. 7).  Therefore, it is questionable if Mr. Miller could have influenced

Petitioner's decisions, even if his pecuniary interest would have been best served in Petitioner's

guilty plea.

### c.    Petitioner Was Competent at the Time of His Trial and Plea

Petitioner asserts that his substantive due process rights were violated because he was

incompetent to stand trial and enter a guilty plea.   Petitioner has never raised this claim before.  A

§ 2255 Petitioner who fails to properly raise an issue at trial or on direct appeal will be

procedurally barred from raising the issue in a collateral attack unless he can show cause and actual

prejudice.  See United States v. Frady, 456 U.S. 152, 167-68 (1982).  "To show 'cause,' a

petitioner must demonstrate that the reason for failing to raise the issue is something that cannot be

fairly attributed to him."  United States v. Riddick, 15 F. Supp.2d 673, 676 (E.D. Pa 1998) (finding

Petitioner's alleged lack of competency at trial due to drug use was procedurally barred because it

was not raised).  As the Government correctly points out, Petitioner never asserted at trial that he

was incompetent, even after receiving an extensive psychological report.[5]  (See Response 27).  Nor

---

[5]  Although the Government has not specifically asserted that the competency claim is
procedurally defaulted, the arguments in its Response indicates that the Government has
raised the issue.  Nonetheless, the issue of procedural default may be raised sua sponte by
the Court.  See cf. Smith v. Horn, 120 F.3d 400, 407-409 (3d Cir. 1997) (explaining that

does Petitioner demonstrate that failure to raise competency was due to something not attributable to him.  Thus, Petitioner's claim that he was incompetent to stand trial is procedurally barred.

Furthermore, even if Petitioner was not procedurally barred from alleging incompetence, this Court holds that the record conclusively shows Petitioner was competent at the time of trial and that the Court need not hold a hearing to reconsider the issue. The colloquy shows Petitioner knew and understood the charges against him and had the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.  He had a rational as well as a factual understanding of the proceeding against him.  Godinez v. Moran, 509 U.S. 389, 396 (1993) (discussing the competency standard for pleading guilty).

The only allegation of incompetence is the unsupported statement of the Petitioner's current attorney-in-fact who "questions [Petitioner's] understanding of the proceeding." (See Petr's Mem. Supp. 10).  This lone statement does not provide the Court with an adequate reason to further delve into Petitioner's mental state at the time of his plea and his trial.  Langston v. United States, 105 F. Supp. 2d 419, 423 (E.D. Pa 2000) ("If a defendant's mere allegations that [he] was incompetent to stand trial were enough to warrant an evidentiary hearing, an evidentiary hearing would be required in every § 2255 case in which competency is raised.").

Petitioner relies on two Supreme Court cases to support his argument that the Court must reconsider Petitioner's competence at the time of trial, but his arguments are unconvincing.  Citing Drope v. Missouri, 420 U.S. 162 (1975), Petitioner states that "counsel's doubt about the defendant's competence is a factor to be taken into consideration in deciding to order an

procedural default may be raised sua sponte by the Court of Appeals but it is inappropriate to raise the issue where "'it is evident that a miscarriage of justice has occurred.") (internal citations omitted).  There is no evidence of a miscarriage of justice here.

examination." (See Petr's Mem. Supp. 10). Relying on Pate v. Robinson, 383 U.S. 375 (1966),

Petitioner reminds the Court that a conclusive determination as to competence cannot be made on

the basis of Petitioner's responses to a colloquy or his demeanor at trial. However, Petitioner

ignores that in both Pate and Drope, the issue of competence was raised before the trial court, not

for the first time on collateral appeal. See Riddick, 15 F.Supp. 2d at 677 ("Failure of defense

counsel to raise the competency issue at trial, while not dispositive, is evidence that defendant's

competency was not really in doubt . . ." quoting Watts v. Singletary, 87 F.3d 1282, 1288 (11th

Cir. 1996).

　　　　In the instant case, neither Petitioner nor his experienced counsel ever raised his mental

health as an issue at his plea or his trial. The undersigned questioned Petitioner and Petitioner's

attorney Ms. Brotman, at some length about many things, including Petitioner's mental state during

the plea colloquy and expressly stated satisfactorily that Defendant was competent. (N.T. 32)

Thus, this Court holds that the mere unsubstantiated claim that Defendant is incompetent, alleged

for the first time on collateral attack, when the undersigned was satisfied that Plaintiff was

competent and well-represented by counsel at his plea and his trial, does not raise a legitimate

claim of incompetence and the Court need not hold a hearing to consider the matter further.

### D.　　　The Anticipatory Warrant

　　　　Petitioner asserts that "examination of prior counsel's file reveals defendant was subjected

to a search based on an anticipatory warrant, but the grounds for that do not appear." (See Pro Se

Pet. 7). Petitioner provides no additional facts or explanation for the basis of this claim. The

Court can only assume that Petitioner is attempting to assert a Fourth Amendment challenge to the

use of an anticipatory warrant. First, the claim is procedurally defaulted because it was never

raised before trial or at the trial or plea hearing.  Second, assuming, <u>arguendo</u>, that the Court could reach the merits, Petitioner's claim fails.  In <u>United States v. Loy</u>, the Third Circuit articulated the general principles governing anticipatory search warrants in the context of a child pornography investigation. 191 F.3d 360, 364 (3d Cir. 1999).  Anticipatory warrants "which meet the probable cause requirement and specifically identify the triggering event are not <u>per</u> <u>se</u> unconstitutional." <u>Id.</u> The Third Circuit explained that "where the warrant application indicates that there will be a controlled delivery of contraband to the place to be searched, the nexus requirement of probable cause is usually satisfied."  <u>Id.</u> at 365.

Here, the alleged anticipatory warrant was based on a future controlled delivery of child pornographic videotapes to the Petitioner's residence.  (<u>See</u> Govt. Resp. Attach. B).   The Affidavit attached to the Warrant fully explained the "triggering event" and requested the permission to search the home of Petitioner after Petitioner took in the package containing the ordered child pornography videotapes into his home.  (<u>See</u> Govt. Resp. Attach. B).   Therefore, if the Court were to consider the merits, the anticipatory warrant was based on sufficient probable cause. The claim questioning the sufficiency of the warrant is dismissed.

**VI.** <u>**Conclusion**</u>

For the foregoing reasons, Petitioner's § 2255 Motion is denied in its entirety.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 04-262 |
| v. | : | |
| | : | CIVIL NO. |
| JAMES MACEWAN | : | NO. 07-3369 |

**<u>ORDER</u>**

AND NOW, this 31st day of March, 2008, for the reasons set forth above, it is hereby

ORDERED as follows:

1.    The Petition for Writ of Habeas Corpus is DENIED with Prejudice and

DISMISSED without an evidentiary hearing.

2.    There is no probable cause to issue a certificate of appealability.

3.    The clerk of the Court shall close this case.


BY THE COURT:


  s/ Michael Baylson
_____

Michael M. Baylson, U.S.D.J.

A:\MacEwan 04-262 - Memorandum 3-31-08.wpd

-23-